UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**SALES PAD, LLC**  Honorable Janet T. Neff
a Michigan Limited Liability Company

    **Plaintiff/Counter-Defendant,**  Case No. 1:16-cv-01444

    v.

MARCUS LEMONIS LLC , a
Delaware Limited Liability Company,
and **MARCUS LEMONIS**, Individually

    **Defendants/Counter-Plaintiffs.**

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants, Marcus Lemonis and Marcus Lemonis LLC (hereinafter, "ML LLC," and together with Marcus Lemonis, the "Defendants"), by and through their attorneys, submit their Answer, Affirmative Defenses and Counterclaims to Plaintiff's Complaint, and in support thereof state as follows:

### Jurisdiction

1. Plaintiff, Sales Pad, LLC, (hereinafter "Sales Pad") is a limited liability company organized under the laws of the State of MICHIGAN with its principal place of business in Grand Rapids, MICHIGAN.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint.

2. Defendant, Marcus Lemonis, LLC (hereinafter "ML LLC"), is a limited liability company organized under the laws of State of DELAWARE with its principle place of business in ILLINOIS.

**ANSWER**: Defendants admit the allegations of paragraph 2 of the Complaint.

3. Defendant, Marcus Lemonis (hereinafter "ML") is an individual and a citizen of the State of ILLINOIS.

**ANSWER**: Defendants admit the allegations of paragraph 3 of the Complaint.

4. Jurisdiction is based upon diversity of citizenship and the amount in controversy being in excess of $75,000 pursuant to 28 USC § 1332(a)(l).

**ANSWER**: Defendants admit that jurisdiction is proper and that the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. § 1332(a)(1) but denies that any amounts are owed Plaintiff.

## Venue

5. Venue is proper in the Western District of Michigan under 28 USC § 1391(b)(2).

**ANSWER**: Defendants admit that venue is proper.

## Common Allegations

6. In 2015, negotiations began between ML and Sales Pad intended to lead to the formal execution of a Marketing and Promotional Services Agreement ("Marketing Agreement") together with related agreements whereby, among other services, ML was to act as a consultant to Sales Pad and provide marketing and promotional services through various entertainment and media outlets including television, radio, internet and social media promotions for the sale and licensing of Sales Pad's point-of-sale accounting software and services and related products.

**ANSWER**: Defendants admit that in 2015 negotiations began between Sales Pad, on the one hand, and ML and/or ML LLC, on the other hand, regarding a potential business arrangement. Defendants further admit that Sales Pad and Marcus Lemonis discussed entering into an agreement whereby Marcus Lemonis would try to promote certain of Sales Pad's products and/or software on the television show "The Profit" and on Marcus Lemonis' social media platforms. Defendants deny the remaining allegations of paragraph 6 and further deny that the parties executed a Marketing Agreement or any other agreements.

7. Target markets were to include small businesses and other entities to be identified by ML in which ML and ML LLC held (or in the future acquired) an equity interest or had (or in the future created) a business relationship.

**ANSWER**: Defendants deny the allegations of paragraph 7 as they are untrue.

8. Target markets were to also include the many entrepreneurs and small business owners who view ML's CNBC television program "The Profit" or who follow ML's posts on social media platforms including Facebook and Twitter.

**ANSWER**: Defendants admit that the parties discussed potential target markets that would include viewers of the television show "The Profit" and followers of Marcus Lemonis on social media platforms. Defendants deny the remaining allegations of paragraph 8 as they are untrue.

9. In exchange for ML entering into the Marketing Agreement, Sales Pad proposed to make certain cash payments to ML LLC and to enter in a separate agreement with ML LLC to issue warrants or other rights whereby ML LLC could initially acquire 105,000 non-voting units of Sales Pad contingent upon achievement of certain sales targets and other requirements.

**ANSWER**: Defendants admit that there were discussions concerning the scope of the compensation Marcus Lemonis and/or ML LLC would receive for promotional services rendered by Marcus Lemonis. Defendants further admit that there were discussions among Sales Pad, Marcus Lemonis and ML LLC regarding a separate agreement wherein Sales Pad would issue warrants and/or other rights to ML LLC to acquire units of Sales Pad. Defendants deny the remaining allegations of paragraph 9 as they are untrue and further deny that the parties executed any formal agreements.

10. Sales Pad also proposed that, if additional sales targets and requirements were achieved, then ML, LLC could subsequently exercise additional warrants or rights to acquire an additional 117,222 non-voting units of Sales Pad.

**ANSWER**: Defendants admit that there were discussions concerning the issuance of additional warrants and or rights for ML LLC to acquire additional units of Sales Pad. Defendants deny the remaining allegations of paragraph 10 as they are untrue and further deny that the parties executed any formal agreements.

<u>**Count I**</u>
<u>**Fraud and Fraud In The Inducement**</u>

11. Sales Pad hereby incorporates paragraphs 1-10 of the Common Allegations as if the same were stated verbatim herein.

**ANSWER**: Defendants incorporate their answers to paragraphs 1 through 10 above for their answer to paragraph 11 of the Complaint.

12. In reliance upon the initial negotiations, Sales Pad commenced performance of the Marketing Agreement with Sales Pad software installation, first, in the Chicago area at a dog food company known as Bentley's Corner Barkery, and later at a business in Pittsburgh known as Simple Greek.

**ANSWER**: Defendants admit that Sales Pad installed software at Bentley's Corner Barkery and at The Simple Greek restaurant. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 12 of the Complaint.

13. During the course of negotiations with Sales Pad, and prior to the execution of any written documents but during the course of continuing to exchange various written drafts of term sheets and proposed agreements, ML demanded Sales Pad wire transfer $250,000.00 to ML LLC as a condition precedent for Sales Pad continuing the software implementation at Simple Greek as well as for ML continuing the ongoing negotiations of the Marketing Agreement and other proposed agreements.

**ANSWER**: Defendants deny the allegations of paragraph 13 of the Complaint as they are untrue.

14. Based upon ML's assurances that ML would continue implementation of Sales Pad products and that ML would continue to provide the marketing and promotional services pursuant to the Marketing Agreement agreed upon in principle but not yet consummated, Sales Pad wire transferred $250,000.00 to ML LLC's account at the Private Bank in Chicago in January 2016. ML is the manager and sole member of ML LLC.

**ANSWER**: Defendants admit that Sales Pad wire transferred to ML LLC $250,000 in January 2016 and that Marcus Lemonis is the manager of ML LLC. Defendants deny the remaining allegations of paragraph 14 of the Complaint as they are untrue.

15. Following payment from Sales Pad, ML failed to provide the marketing and promotional services that ML had promised to provide including but not limited to social media, TV shows, joint press releases and promotional appearances.

**ANSWER**: Defendants deny the allegations of paragraph 15 of the Complaint as they are untrue.

16. By June 2016, ML failed to honor his commitments, and failed to finalize or execute any written agreements between ML and Sales Pad and between ML LLC and Sales Pad as contemplated by the draft term sheet and other proposed agreements.

**ANSWER**: Defendants deny the allegations of paragraph 16 of the Complaint as they are untrue.

17. In June 2016, Sales Pad reluctantly concluded ML had completely misrepresented and defrauded Sales Pad into believing ML had the capability and intention to perform the agreed upon marketing and promotional services, including ML's false assurances that in certain instances, ML had performed and provided the agreed marketing and promotional services but failed to do so.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning Sales Pad's state of mind. Further answering, the allegations of paragraph 17 of the Complaint call for a legal conclusion for which no answer is required. To the extent an answer to the remaining allegations of paragraph 17 of the Complaint is required, Defendants deny the allegations that ML misrepresented and defrauded Sales Pad and/or provided false assurances to Sales Pad as they are untrue. Defendants deny the remaining allegations of paragraph 17 of the Complaint as they are untrue.

18. In June 2006, Sales Pad demanded a return of the $250,000.00 it had wired to ML LLC in January 2016.

**ANSWER**: Defendants admit that Sales Pad demanded return of the $250,000 it had wired to ML LLC in January 2016. Further answering, Defendants deny that Sales Pad is entitled to a return of the $250,000 or any other monies.

19. At the time that ML wire transferred $250,000 ML LLC, ML knew that Sales Pad was relying upon ML's representations, inter alia, that ML would continue to provide the marketing and promotional services pursuant to the Marketing Agreement then agreed upon in principle but not yet consummated.

**ANSWER**: Defendants deny the allegations of paragraph 19 of the Complaint as they are untrue.

20. ML knew his representations to Sales Pad in January 2016 were false when made and were made with the intention that Sales Pad would rely upon same to induce it into wire transferring the $250,000.00 to ML LLC.

**ANSWER**:   Defendants deny the allegations of paragraph 20 of the Complaint as they are untrue.

21. Sales Pad acted in reliance upon ML's representations and as a direct, natural and proximate result of such false and reckless representations, Sales Pad has been damaged in the amount of $250,000.00.

**ANSWER**:   Defendants deny the allegations of paragraph 21 of the Complaint as they are untrue.

WHEREFORE, Defendants respectfully request that this Count enter judgment in favor of Defendants and against Plaintiff on Count I of the Compliant, dismiss Count I of the Complaint with prejudice, award Defendants their costs of defense including, but not limited to, attorneys' fees, and grant such other and further relief that this Court deems just and proper.

      Respectfully submitted,

      MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

      By: /s/ Joseph M. Infante
        Joseph M. Infante (P68719)
        Attorneys for Defendants/Counter-Plaintiffs
        99 Monroe Avenue NW, Suite 1200
        Grand Rapids, MI  49503
        (616) 454-8656

Dated:  February 2, 2017

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

**SALES PAD, LLC**  
a Michigan Limited Liability Company

    **Plaintiff/Counter-Defendant,**

v.

**MARCUS LEMONIS, LLC**, a  
Delaware Limited Liability Company,  
and **MARCUS LEMONIS**, Individually

    **Defendants/Counter-Plaintiffs.**

Honorable Janet T. Neff

Case No. 1:16-cv-01444

## DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants, Marcus Lemonis and Marcus Lemonis LLC (hereinafter, "ML LLC," and together with Marcus Lemonis, the "Defendants"), by and through their attorneys, submit their Affirmative Defenses to Plaintiff's Complaint, and in support thereof state as follows:

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### *Second Affirmative Defense*

Plaintiff's claim is barred, in whole or in part, by the doctrines of unclean hands, laches, waiver and estoppel.

### *Third Affirmative Defense*

Plaintiff's claim is barred, in whole or in part, because Plaintiff cannot prove any material misrepresentations by Defendants.

*Fourth Affirmative Defense*

Plaintiff's claim is barred, in whole or in part, due to Plaintiff's own acts and/or omissions.

WHEREFORE, Defendants respectfully request that this Count enter judgment in favor of Defendants and against Plaintiff on Count I of the Compliant, dismiss Count I of the Complaint with prejudice, award Defendants their costs of defense including, but not limited to, attorneys' fees, and grant such other and further relief that this Court deems just and proper.

    Respectfully submitted,

    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Joseph M. Infante
    Joseph M. Infante (P68719)
    Attorneys for Defendants/Counter-Plaintiffs
    99 Monroe Avenue NW, Suite 1200
    Grand Rapids, MI 49503
    (616) 454-8656

Dated: February 2, 2017

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**SALES PAD, LLC**
a Michigan Limited Liability Company

    **Plaintiff/Counter-Defendant,**

v.

MARCUS LEMONIS LLC , a
Delaware Limited Liability Company,
and **MARCUS LEMONIS**, Individually

    **Defendants/Counter-Plaintiffs.**

Honorable Janet T. Neff

Case No. 1:16-cv-01444

# DEFENDANTS/COUNTER-PLAINTIFFS' COUNTERCLAIM AGAINST SALES PAD, LLC

Defendants/Counter-Plaintiffs, Marcus Lemonis and Marcus Lemonis LLC (hereinafter, "ML LLC," and together with Marcus Lemonis, the "Defendants/Counter-Plaintiffs"), by and through their attorneys, submit their Counterclaim Against Sales Pad, LLC, and state as follows:

1. Marcus Lemonis is an individual who resides in the State of Illinois and is the host of the popular television show "The Profit" which airs on CNBC.

2. Marcus Lemonis LLC ("ML LLC") is a limited liability company organized under the laws of the State of Delaware.

3. Plaintiff, Sales Pad, LLC, (hereinafter "Sales Pad") is a limited liability company organized under the laws of the State of Michigan with its principal place of business in Grand Rapids, Michigan.

4. Jurisdiction is based upon diversity of citizenship and the amount in controversy being in excess of $75,000 pursuant to 28 USC § 1332(a)(l).

5. Venue is proper in the Western District of Michigan under 28 USC § 1391(b)(2).

6. "The Profit" is a reality television show wherein Marcus Lemonis meets with struggling businesses and assesses whether he wants to make an investment in the business in exchange for an equity ownership interest in the business. Sometimes Marcus Lemonis invests in the business, other times he does not.

7. In or about the summer of 2015, Marcus Lemonis and representatives of ML LLC met with representatives of Sales Pad to discuss a possible business opportunity. During this meeting, Sales Pad provided a demonstration of its products and/or software to Lemonis and representative of ML LLC. In addition, Marcus Lemonis and Sales Pad discussed the possibility of entering into an agreement whereby Marcus Lemonis would try to mention Sales Pad's products and/or software during episodes of "The Profit" and ML LLC and Sales Pad discussed utilizing Sales Pad's products and/or software in various entities operated and/or controlled by Marcus Lemonis and/or ML LLC. After this meeting, the parties agreed to continue discussions concerning a formal agreement.

8. While discussions between Sales Pad, on the one hand, and Marcus Lemonis and ML LLC, on the other hand, were ongoing: (1) Marcus Lemonis mentioned Sales Pad's products and/or software during episodes of "The Profit"; (2) Marcus Lemonis made a number of "tweets," on the social-media site Twitter, promoting Sales Pad's products and/or software; and (3) ML LLC assisted Sales Pad in fixing a number of problems with the Sales Pad products and/or software and provided guidance to Sales Pad in ways to improve Sales Pad's products and/or software.

9. Marcus Lemonis has over 1 million followers on his Twitter account.

10. Because Marcus Lemonis had already begun to mention Sales Pad's products and/or software during episodes of "The Profit" and made numerous tweets about Sales Pad's

products and/or software, Marcus Lemonis requested payment in the amount of $250,000 for his promotional efforts of Sales Pad's products and/or software to date. Sales Pad agreed to this request and made the payment in January 2016.

11.     Subsequent to the $250,000 payment from Sales Pad, Marcus Lemonis mentioned Sales Pad's products and/or software in episodes of "The Profit" and continued to make tweets promoting Sales Pad's products and/or software on Twitter.

12.     At no time did Marcus Lemonis and Sales Pad reach a formal agreement with regards to the promotional efforts undertaken by Marcus Lemonis.

13.     From the time of the parties' first meeting in the summer of 2015 through May 2016, ML LLC continued to provide material support and guidance to Sales Pad in connection with the development and improvement of Sales Pad's products and/or software. In addition, ML LLC incurred out-of-pocket expenses, of approximately $45,000, in connection with the support and guidance it provided to Sales Pad.

14.     Additionally, a number of problems and issues began to occur with Sales Pad's products and/or software from the outset. Sales Pad requested that ML LLC assist in identifying and correcting many of the problems. ML LLC agreed to provide Sales Pad with assistance in identifying and correcting many of the problems with Sales Pad's products and/or software.

15.     At no time did ML LLC and Sales Pad reach a formal agreement with regards to any services, assistance and/or guidance provided by ML LLC. Moreover, at no time has Sales Pad remunerated ML LLC for the services rendered by ML LLC or the out-of-pocket expenses incurred by ML LLC in connection with those services.

**COUNT I – UNJUST ENRICHMENT**
**Marcus Lemonis v. Sales Pad, LLC**

16. Marcus Lemonis hereby incorporates by reference Paragraphs 1 though 15 above as though fully set forth herein.

17. At no time did Marcus Lemonis and Sales Pad reach an agreement with respect to Marcus Lemonis mentioning Sales Pad's products and/or software during episodes of "The Profit" and/or with respect to Marcus Lemonis promoting Sales Pad's products and/or software using social media.

18. The value of a tweet from a celebrity of Marcus Lemonis' stature, having over 1 million followers on Twitter, can exceed $50,000 per tweet.

19. Sales Pad received an unjust benefit from Marcus Lemonis' mentioning Sales Pad's products and/or software during episodes of "The Profit" and/or from Marcus Lemonis' promotion of Sales Pad's products and/or software using social media, specifically, on Twitter.

20. By mentioning Sales Pad's products and/or software on the show "The Profit" and by promoting Sales Pad's products and/or software on Twitter, Marcus Lemonis passed up other promotional business opportunities to his detriment.

21. The value of the promotional services rendered by Marcus Lemonis for the benefit of Sales Pad greatly exceeds the $250,000 payment Sales Pad made to Marcus Lemonis.

22. It would be inequitable and unjust for Sales Pad to retain the benefit conferred upon it by Marcus Lemonis without remunerating Marcus Lemonis for the full value of the services he provided to Sales Pad.

23. As a result, Marcus Lemonis has suffered damage.

WHEREFORE, Marcus Lemonis respectfully seeks judgment against Sales Pad, LLC for actual damages, together with prejudgment interest, and his litigation expenses, court costs and attorneys' fees, and such other and relief that this Court deems just and proper.

### COUNT II – UNJUST ENRICHMENT
### Marcus Lemonis LLC v. Sales Pad, LLC

24. ML LLC hereby incorporates by reference Paragraphs 1 though 23 above as though fully set forth herein.

25. At no time did ML LLC and Sales Pad reach an agreement with respect to ML LLC utilizing Sales Pad's products and/or software in various entities operated and/or controlled by Marcus Lemonis and ML LLC. In addition, ML LLC and Sales Pad did not reach an agreement with respect to the assistance provided by ML LLC in fixing a number of problems with the Sales Pad products and/or software and the guidance provided by ML LLC to improve Sales Pad's products and/or software.

26. The value of the services provided by ML LLC to Sales Pad exceeds $560,000. In addition, ML LLC incurred out-of-pocket expenses of approximately $45,000 in connection with the services provided to Sales Pad.

27. Sales Pad received an unjust benefit as a result of the services rendered by ML LLC, including the out-of-pocket expenses incurred by ML LLC.

28. By providing the services to Sales Pad, ML LLC passed up other business opportunities to its detriment.

29. It would be inequitable and unjust for Sales Pad to retain the benefit conferred upon it by ML LLC without remunerating ML LLC for the full value of the services ML LLC provided to Sales Pad.

30. As a result, ML LLC has suffered damage.

WHEREFORE, Marcus Lemonis LLC respectfully seeks judgment against Sales Pad, LLC for actual damages, together with prejudgment interest, and its litigation expenses, court costs and attorneys' fees, and such other and relief that this Court deems just and proper.

        Respectfully submitted,

        MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

        By: /s/ Joseph M. Infante
            Joseph M. Infante (P68719)
            Attorneys for Defendant/Counter-Plaintiffs
            99 Monroe Avenue NW, Suite 1200
            Grand Rapids, MI 49503
            (616) 454-8656

Dated: February 2, 2017

## CERTIFICATE OF SERVICE

I certify that on February 2, 2017, I electronically filed the foregoing pleading(s) with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record.

        MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

        By: /s/ Joseph M. Infante
        Joseph M. Infante (P68719)
        Attorneys for Defendants/Counter-Plaintiffs
        99 Monroe Avenue NW, Suite 1200
        Grand Rapids, MI 49503
        (616) 454-8656